UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

TROY SWAIN,

                    Plaintiff,

          -against-

TOWN OF WAPPINGER, THE TOWN OF
WAPPINGER HIGHWAY DEPARTMENT,
LORI JIAVA, individually and in her capacity
as Supervisor of the Town of Wappinger, THE
TOWN BOARD OF THE TOWN OF WAPPINGER,
WILLIAM H. BEALE, individually and in his
Capacity as Wappinger Town Councilman,
WILLIAM CICCARELLI, individually and in
his capacity as Wappinger Town Councilman,
JOHN J. FENTON, individually and in his capacity
as Wappinger Town Councilman, MICHAEL
KUZMICZ, individually and in his Capacity as
Wappinger Town Councilman, and
ANTHONY STRUSS, individually and in his
Capacity as an agent for the Town of Wappinger,

                    Defendants.
------------------------------------------------------------X

**OPINION AND ORDER**

17 Civ. 5420 (JCM)

       Plaintiff Troy Swain ("Plaintiff") commenced this action against the Town of Wappinger

("Town"), the Town of Wappinger Highway Department ("Highway Department"), Lori Jiava,

the Town Board of the Town of Wappinger ("Town Board"), William H. Beale, William

Ciccarelli, John Fenton, Michael Kuzmicz (collectively, the "Town Defendants"), and Anthony

Struss.[1] (Docket No. 1-1). Plaintiff filed his Complaint on May 19, 2017 in the Supreme Court

of the State of New York, County of Dutchess. (Docket No. 1-1). Defendants removed the

---

[1] This action is before this Court for all purposes on the consent of the parties, pursuant to 28 U.S.C. § 636(c).
(Docket No. 15).

action to this Court pursuant to 28 U.S.C. § 1441. (Docket No. 1).[2] Before this Court are the

Town Defendants' and Plaintiff's motions for summary judgment pursuant to Rule 56 of the

Federal Rules of Civil Procedure. (Docket Nos. 47, 53, 70). The Court heard oral argument on

the parties' motions on June 21, 2019. For the reasons set forth below, the Town Defendants'

motion is granted in part and denied in part, and Plaintiff's motion is granted in part and denied

in part.

## I. BACKGROUND

The following facts are taken from the Town Defendants' Statement of Material Facts

submitted pursuant to Local Rule 56.1 of the United States District Courts for the Southern and

Eastern Districts of New York, ("Defs. 56.1"), (Docket No. 51), Plaintiff's Statement of Material

Facts, ("Pl. 56.1"), (Docket No. 72), the Town Defendants' response to Plaintiff's 56.1 statement

("Defs. 56.1 Reply"), (Docket No. 66), the parties' exhibits, and the briefs submitted by the

parties in support of their contentions.

## A. Plaintiff's Employment with the Town

Plaintiff, a 52-year old African-American male, worked for the Town of Wappinger from

November 5, 2012 until June 14, 2016. (Defs. 56.1 ¶¶ 1-2; Pl. 56.1 ¶¶ 1, 5, 92). Plaintiff was

initially employed full-time as a Motor Equipment Operator ("MEO") within the Highway

Department and was appointed, on February 11, 2016, as Deputy Highway Superintendent.

(Defs. 56.1 ¶¶ 4, 24; Pl. 56.1 ¶¶ 6, 35).

---

[2] On March 20, 2017, Plaintiff filed a stipulation discontinuing the following claims: (1) the claims for relief under the Civil Rights Act of 1991 in Counts I, II, III, VI, IX, XIII, (2) Counts IV, VII, VIII, XII, XIV, XV, XVI, XVII, XVIII, XXII, and XXIII in their entirety; (3) Count XXI for libel per se against as the Town Defendants; and (4) Count XXV for negligent/intentional infliction of emotional harm as against the Town Defendants in their official capacities. (Pl. Ex. F).

Of the 15 employees in the Highway Department, Plaintiff was the only African-American. (Pl. 56.1 ¶ 9). Plaintiff claims that during his time with the Highway Department, he faced an environment replete with racial hostility and racially-motivated negative treatment. For example, Plaintiff identifies several occasions where his coworkers used the word "nigger" in relation to others and directed at Plaintiff. (Defs. 56.1 ¶¶ 10, 14, 26, 29; Pl. 56.1 ¶¶ 15-19, 20-22). Plaintiff complained informally to the former Highway Superintendent as well as a union representative, but his concerns were dismissed. (Pl. Dep. at 116-17). Plaintiff claims that he stopped complaining because he did not want to lose his job and he did not think his complaints would be effective. (Pl. 56.1 ¶ 64). In addition to identifying several occasions where his coworkers in the Highway Department used racial epithets, Plaintiff alleges other incidents that he contends were racially motivated, such as the Highway Superintendent's acknowledgment that he would get "slack" for hiring Plaintiff and being passed over for favorable snow routes. (Defs. 56.1 ¶¶ 5, 18; Pl. 56.1 ¶¶ 13-14, 18).

Plaintiff was promoted to Deputy Highway Superintendent by Highway Superintendent Vincent Bettina on February 11, 2016. (Defs. 56.1 ¶ 24; Pl. 56.1 ¶ 35). When Plaintiff was promoted, Plaintiff believed that he would receive a pay raise in the form of a stipend. (Pl. 56.1 ¶ 36). Plaintiff was also permitted to use a cell phone and tablet provided by the Town and provided with exclusive use of a Town vehicle. (Pl. 56.1 ¶ 45). Plaintiff's promotion prompted backlash from his coworkers, the Town Board, and the Civil Service Employees Association, Inc. Local 1000 AFSCME, AFL-CIO ("CSEA"), the union representing Town employees. (Defs. 56.1 ¶ 26; Pl. 56.1 ¶¶ 43, 45, 51). The CSEA took the position that Plaintiff was elevated in violation of the terms of the Collective Bargaining Agreement between the Town and CSEA (the "CBA"), which required more senior employees to be promoted over Plaintiff. (Pl. Ex. J).

Certain members of the Town Board adopted the position that the role of Deputy Highway Superintendent did not exist and Plaintiff, therefore, had been erroneously promoted. (Pl. 56.1 ¶ 34). Other Town Board members and members within the Highway Department took issue with Plaintiff's use of the Town vehicle, and shortly after Plaintiff's promotion, the Town Board unanimously adopted a vehicle policy that only allowed the Highway Superintendent, and not the Deputy, to have use of a Town vehicle. (Pl. 56.1 ¶¶ 51, 71). According to Plaintiff, following his promotion, one of his coworkers in the Highway Department referred to him as a "trouble making nigger." (Pl. 56.1 ¶ 21).

## B. Plaintiff's Complaints of Racial Harassment

On April 7, 2016, Plaintiff filed a Workplace Violence Report with the Town, alleging racial harassment in the workplace. (Pl. 56.1 ¶ 55). He subsequently filed a complaint with the New York State Division of Human Rights on April 12, 2016. (Pl. 56.1 ¶ 56). In his complaint, Plaintiff repeated his allegations of racial harassment. (Pl. Ex. T). According to Plaintiff, he did not file a complaint earlier because he was afraid of losing his job, especially because it was the former Highway Superintendent's son-in-law who was making many of the racial slurs. (Pl. 56.1 ¶ 64; Pl. Dep. at 117-18). In response, the Town retained outside counsel, Kenneth Bernstein, to investigate Plaintiff's claims. (Pl. 56.1 ¶ 65). In a report dated May 9, 2016, Mr. Bernstein concluded that there was no credible reason to believe that Plaintiff had been subjected to racial harassment, threats or intimidation. (Pl. 56.1 ¶¶ 65-66). Upon Mr. Bernstein's recommendation, on May 23, 2016, the Town Board adopted a resolution to institute "Violence Prevention Act Compliance Measures," which required all employees within the Highway Department to attend mandatory training no later than June 30, 2016. (Pl. 56.1 ¶ 68; Pl. Ex. W).

## C. Plaintiff's Termination

On May 24, 2016, Plaintiff's next-door neighbor, defendant Anthony Struss, sent the Town Board photographs and videos of Plaintiff and alleged that Plaintiff committed "theft of services" from the Town's residents by doing work around his home during the workday with Town equipment. (Defs. 56.1 ¶ 71; Pl. 56.1 ¶ 78). The Town Board consulted with outside counsel, David Wise, Esq., who determined that Plaintiff could be terminated immediately and recommended pressing criminal charges against Plaintiff for theft of Town resources. (Pl. Ex. EE). Mr. Bettina, the Highway Superintendent, refused to carry out Plaintiff's termination in accordance with counsel's recommendation and instead stated that he would follow the disciplinary procedures provided for in the CBA. (Pl. Ex. EE).

On June 13, 2016, notwithstanding Mr. Bettina's objections, the Town Board unanimously adopted a resolution terminating Plaintiff from his employment with the Town. (Defs. 56.1 ¶¶ 77-79; Pl. 56.1 ¶ 90; Bettina Dep.[3] at 86; Pl. Ex. EE). On June 14, 2016, Plaintiff was served with a letter of termination, which stated that his "employment with the Town of Wappinger is terminated effective the date of this letter under Article IX, Section 5 of the Collective Bargaining Agreement between the Town and CSEA." (Pl. Ex. GG). Article IX, Section 5 of the CBA states in full:

> No employee shall be disciplined or discharged without just cause. Just cause shall be subject to the grievance procedure as per this Article – section 6. There shall be a five (5) step discipline process:
>
> 1. Warning
> 2. Written Reprimand
> 3. Suspension without pay for up to three (3) days
> 4. Suspension without pay for no less than four (4) and no more than ten (10) days
> 5. Termination

---

[3] Refers to the deposition transcript of Vincent Bettina, dated September 28, 2018, and attached as Plaintiff's Exhibit SS. (Docket No. 71-49).

> Any action on the part of an employee, which endangers the safety, health or welfare of another employee or citizen of the Town, shall be cause to start at Step 4.

(CBA Article IX, § 5). It is undisputed that the Town did not follow steps (1) through (4) of the CBA's discipline process before terminating Plaintiff, but the parties disagree over whether the CBA required the Town to do so.

After his termination, Plaintiff applied for unemployment benefits and was initially denied based on the allegation that he had been terminated for cause. (Pl. 56.1 ¶ 95). Plaintiff requested a hearing, and following the hearing, an Administrative Law Judge ("ALJ") reversed the order, finding that the time stamps on the photographs and videos used to justify Plaintiff's termination were unreliable. (Pl. 56.1 ¶ 96). The ALJ also credited the Highway Superintendent's testimony that he had allowed Plaintiff to go home on his breaks and he did not have to clock in or clock out for breaks. (Pl. Ex. JJ). The Town appealed the ALJ's decision, and on March 24, 2017, the Unemployment Insurance Appeal Board denied the Town's appeal and granted Plaintiff unemployment benefits. (Pl. 56.1 ¶ 99; Pl. Ex. JJ).

## II. LEGAL STANDARDS

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). The moving party has the initial burden of showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir.

2009) (citation and internal quotation marks omitted).  A fact is "material" if it might "affect the outcome of the suit under the governing law." *Id.*

In considering a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (citation and internal quotation marks omitted).  However, the nonmovant cannot defeat a motion for summary judgment by relying on unsupported assertions, conjecture or surmise. *See Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).  The nonmovant must also do more than show that there is "some metaphysical doubt as to the material facts." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Matsushita Elec. Indus Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  To survive a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno v. Elmsford Union Free School Dist.*, 812 F. Supp. 2d 454, 467-68 (S.D.N.Y. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986)).

## III.  THE TOWN DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The Town Defendants move for summary judgment on Plaintiff's claims for hostile work environment, violation of due process, failure to train, retaliation and unlawful surveillance under 42 U.S.C. § 1981 and § 1983, Plaintiff's conspiracy claims under 42 U.S.C. § 1985 and §1986, and Plaintiff's supplemental state law claims for discrimination under New York State Human Rights Law ("NYSHRL"), unlawful surveillance, unjust enrichment, as well as intentional and negligent infliction of emotional distress.  They also argue that the Highway

Department and the Town Board are entitled to summary judgment because they are not separate suable entities apart from the Town.

## A. Claims Against the Highway Department and the Town Board

The Town Defendants argue that all claims against the Highway Department and Town Board should be dismissed because they are not separate legal entities apart from the Town. (Docket No. 50 at 13-14). The Town Defendants argue that "[u]nder New York law, departments which are merely administrative arms of a municipality, do not have a legal identity separate and apart from the municipality and cannot sue or be sued." *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002); *see also Perros v. Cnty. of Nassau*, 238 F. Supp. 3d 395, 400 (E.D.N.Y. 2017); *Willard v. Town of Hamburg*, No. 96 Civ. 0187E(H), 1996 WL 607100, at *1 (W.D.N.Y. Sept. 30, 1996) (dismissing claims against the town board because it did not "exist separate and apart from the Town" and did not have its own legal identity).[4] Plaintiff does not respond to or oppose this argument. "Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." *Taylor v. City of N.Y.*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003). Even if Plaintiff had not abandoned his claims against the Highway Department and Town Board, these claims would still fail because the Highway Department and the Town Board do not exist as legal entities separate and apart from the Town, and the claims against them are duplicative of the claims asserted against the Town. *See Hall*, 185 F. Supp. 2d at 303; *Willard*, 1996 WL 607100, at *1. Accordingly, the Court dismisses the Highway Department and the Town Board from this action.

---

[4] In accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) and Local Rule 7.2 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York, a copy of this case and other cases, *infra*, that are unpublished or only available by electronic database, accompany this opinion and shall be simultaneously delivered to *pro se* defendant, Anthony Struss.

**B. Plaintiff's Claims Under § 1981**

In Counts I, II, III, VI, IX and XIII Plaintiff asserts claims pursuant to § 1981 claiming hostile work environment, violation of due process, failure to train, retaliation and unlawful surveillance. Plaintiff brings these claims against the Town as well as Jiava, Beale, Ciccarelli, Fenton and Kuzmicz in their official and individual capacities. The Town Defendants move for summary judgment on these claims. The claims brought against the Town Defendants pursuant to § 1981 are dismissed because § 1981 does not create a private right of action against state actors.

In *Jett v. Dallas Independent School District*, the Supreme Court ruled that "the express 'action at law' provided by § 1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws,' provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." 491 U.S. 701, 735 (1989) (citation omitted). More recently, the Second Circuit reinforced *Jett's* holding and found that "§ 1981 does not provide a separate private right of action against state actors." *Duplan v. City of N.Y.*, 888 F.3d 612, 621 (2d Cir. 2018). The Second Circuit reasoned that because § 1983 already provided a remedy against state actors "there is no reason to infer from the rights-conferring language of § 1981(c) that it creates an additional, and duplicative, remedy." *Id.* at 620-21. "The Supreme Court's holding in *Jett* has been interpreted to encompass not only governmental entities, but also individuals sued in their individual capacities who are also state actors." *Gonzalez v. City of N.Y.*, No. 17 Civ. 6518 (GHW), 2019 WL 1407317, at *5 (S.D.N.Y. Mar. 28, 2019) (citing *Whaley v. City of Univ. of N.Y.*, 555 F. Supp. 2d 381, 400-01 (S.D.N.Y. 2008)).

In light of the Supreme Court and the Second Circuit's holding that § 1981 does not

create a private cause of action against state actors, the Court will dismiss all of Plaintiff's §

1981 claims asserted against the Town as well as the § 1981 claims brought against Jiava, Beale,

Ciccarelli, Fenton and Kuzmicz in their individual and official capacities.

## C. Plaintiff's Claims Under § 1983

Section 1983 provides a private right of action against any person who, acting under the

color of state law, causes another person to be subjected to the deprivation of rights under the

Constitution or federal law. *See* 42 U.S.C. § 1983. In Counts I, II, III, VI, IX and XIII Plaintiff

asserts claims under § 1983 for hostile work environment, violation of due process, failure to

train, retaliation and unlawful surveillance. Plaintiff brings these claims against the Town as

well as Jiava, Beale, Ciccarelli, Fenton and Kuzmicz in their official and individual capacities.

The Town Defendants move for summary judgment on these claims.

Municipal defendants cannot be held vicariously liable under § 1983 for their employees'

actions.[5] *See Connick v. Thompson*, 563 U.S. 51, 60-61 (2011) (citations omitted). Rather, a

plaintiff bringing claims under § 1983 against a municipal defendant for the unlawful actions of

its employees must demonstrate "that the 'challenged acts were performed pursuant to a

municipal policy or custom.'" *Duplan*, 888 F.3d at 621 (citation omitted). Likewise, when §

1983 claims are brought against individual municipal employees in their official capacities, "a

plaintiff must [show] the existence of a municipal policy or custom that resulted in the

---

[5] In their papers, the parties appear to misapprehend the law governing municipal liability under § 1983. The Town Defendants argue that Plaintiff's § 1983 hostile work environment claims should be dismissed because Plaintiff has not shown that the Town is vicariously liable for the complained-of acts. (Docket No. 50 at 80). The Town Defendants proceed to analyze whether the facts show negligence with respect to controlling work conditions. (*Id.*). Plaintiff similarly misstates the governing standard for holding municipal defendants liable under § 1983 and analyzes his claim based on the legal principles governing state law claims. (Docket No. 64 at 18). After oral argument, the Court provided the parties with the opportunity to submit supplemental submissions to the Court. (Docket Nos. 80, 81).

underlying violations allegedly committed by the municipal employee defendants." *Gonzalez*, 2019 WL 1407317, at *7. "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61.

With respect to individual liability under § 1983, a plaintiff must demonstrate that the individual defendant was personally involved with the alleged constitutional violation. *See Dawson v. Cnty. of Westchester*, 351 F. Supp. 2d 176, 196 (S.D.N.Y. 2004). "Personal involvement can mean either (1) direct participation, (2) failure to remedy the wrong after learning of it, (3) creation of a policy or custom under which unconstitutional practices occurred, or (4) gross negligence in managing subordinates." *Id.* Individuals sued under § 1983 may raise a qualified immunity defense, which shields government officials performing discretionary functions from liability for civil damages if the defendant proves it was "objectively reasonable" for him or her to believe that his or her actions were lawful. *See Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995).

## 1. Hostile Work Environment

The Town Defendants argue that the hostile work environment cannot be attributed to the Town. (Docket No. 50 at 18). The Court agrees. There is no evidence that it was the Town's policy to support a hostile work environment or to show deliberate indifference to its existence. *See Sullivan v. Newburgh Enlarged Sch. Dist.*, 281 F. Supp. 2d 689, 709 (S.D.N.Y. 2003) (dismissing hostile work environment claim against municipal defendant where there was "no evidence in the record from which a rational trier of fact could infer that the District had a policy or custom of maintaining or being deliberately indifferent to a hostile work environment."). Nor has Plaintiff presented evidence that the individuals responsible for creating the alleged hostile

work environment were entitled to make policy for the Town. *See Mack v. Port Auth. of N.Y. & N.J.*, 225 F. Supp. 2d 376, 384 (S.D.N.Y. 2002) (summary judgment for defendant was warranted where plaintiff did not present evidence that the individuals responsible for the hostile work environment were "entitled to make policy for the [defendant]").

Plaintiff does not meaningfully address why his § 1983 hostile work environment claim should survive against the Town, and his papers cite only to the imputation standard available under New York state law. (Docket No. 64 at 18). Plaintiff argues that members of the Town Board were aware of and condoned the racist animus in the Highway Department once he filed his complaint in April of 2016. (Docket No. 64 at 18). As evidence, Plaintiff cites to the following statement by Beale at a Town Board meeting: "I can tell you honestly diversity is key, okay; and, if there are people here who can't tolerate that, that's their problem." (*Id.*). This evidence identified by Plaintiff is insufficient to support an inference that the Town had a custom or policy that led to the hostile work environment.

At oral argument, Plaintiff argued that the basis for sustaining his hostile work environment claim against the Town was the Town's failure to investigate his allegations of racial harassment. Although this argument was not expressly made in his opposition papers, the Court will consider it here. "Deliberate indifference to claims of [] civil rights violations – tantamount to a custom or policy sufficient to support municipal liability under § 1983 – may be inferred from a municipality's lack of appropriate response to repeated complaints of such violations." *Jackler v. Byrne*, 658 F.3d 225, 246 (2d Cir. 2011). There is no evidence that Plaintiff complained of the alleged hostile work environment to the Town Board until filing his Workplace Violence Report on April 7, 2016. After receiving his complaint, on May 23, 2016, the Town Board retained counsel to investigate the allegations and unanimously adopted the

"Workplace Violence Prevention Act Compliance Measures," which required, among other things, all employees of the Highway Department to receive anti-harassment training no later than June 30, 2016. (Pl. Ex. W). In his opposition papers, Plaintiff has not argued, and has not identified any evidence, that this remedial measure was insufficient.[6] Faced with the absence of any evidence to support an inference of a policy or practice that could be responsible for a hostile work environment, courts routinely grant summary judgment in favor of municipal defendants sued under § 1983. *See Dawson*, 351 F. Supp. 2d at196; *Sullivan*, 281 F. Supp. 2d at 709; *Mack*, 225 F. Supp. 2d at 384.

Plaintiff's hostile work environment claim against Jiava, Beale, Ciccraelli, Fenton and Kuzmicz in their individual capacities also fails as a matter of law because there is no evidence that these defendants were personally involved with the complained-of acts. There is no evidence that the individual defendants were direct participants in the alleged workplace harassment. Under these circumstances, Plaintiff cannot maintain his §1983 hostile work environment claim against Jiava, Beale, Ciccarelli, Fenton or Kuzmicz in their individual capacities.

Accordingly, the Town Defendants' motion for summary judgment on Plaintiff's § 1983 hostile work environment claim is granted.

## 2. Due Process Claim

Plaintiff alleges in Count II that he was terminated from his employment with the Town without due process under the Fourteenth Amendment. Plaintiff casts his claim as one of

---

[6] In his motion for summary judgment, Plaintiff argues that the Town's investigation into Plaintiff's allegations was flawed, but he does not cite to any *facts* in the record to support this argument. (Docket No. 54-3 at 23-24). At summary judgment, after discovery has been completed, Plaintiff must come forward with evidence that creates a genuine issue of material fact, and generalized assertions are insufficient to preclude summary judgment. *See Mack*, 225 F. Supp. 2d at 384.

procedural due process and argues that he was terminated "in violation of the CBA" without notice or the opportunity to respond. (Docket No. 64 at 22). The Town Defendants move for summary judgment on this claim. (Docket No. 50 at 23).

A plaintiff bringing a due process claim against a municipal defendant pursuant to § 1983 must demonstrate that the violations of his rights were "part of an official policy or custom and were therefore actionable under § 1983." *Palumbo v. Manhattan & Bronx Surface Transit Operating Auth.*, 346 F. Supp. 2d 493, 495 (S.D.N.Y. 2004). Municipal policy can be demonstrated through the decisions of local officials who "possess[ ] final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). "A subordinate whose decisions are 'subject to review by the municipality's authorized policymakers' is not a final decisionmaker in the estimation of § 1983, and her decisions neither represent municipal policy nor subject her employer to liability." *Milardo v. Town of Westbrook*, 120 F. Supp. 3d 206, 215 (D. Conn. 2015) (citation omitted). "Whether an official has 'final policymaking authority' is a question for the Court and must be determined by reference to state law." *Id.*

Here, it is undisputed that the Town Board was the final decisionmaker when it came to Plaintiff's termination. In addition, the Town does not identify any other municipal entity that was capable of reviewing the Town Board's resolution to terminate Plaintiff. *See Milardo*, 120 F. Supp. 3d at 215 (Town could be "properly charged [under § 1983] with the Board's decision to fire [plaintiff]" because "the Board's personnel decisions cannot be reviewed by another municipal entity."). The Town Defendants have not argued that the Town Board acted outside of its policymaking authority when it terminated Plaintiff. Thus, Plaintiff's due process claim is properly maintained against the Town because the Town Board had final policymaking authority

when it came to the decision to terminate Plaintiff's employment.  Plaintiff can also maintain his

due process claim against the individual defendants responsible for adopting the resolution to

terminate him from his employment with the Town. *See Ruston v. Town Bd. for Town of*

*Skaneateles*, No. 06 Civ. 927 (FJS)(GHL), 2009 WL 3199194, at *4 (N.D.N.Y. Sept. 30, 2009)

("Where the alleged deprivations occurred as the result of a board vote, involvement as a voting

member of the board may be sufficient personal involvement [to support a § 1983 claim]").

The Town Defendants move for summary judgment on the following grounds: (1) the

availability of adequate post-deprivation remedies under the CBA and Article 78 bar Plaintiff's

due process claim; and (2) the individual defendants are entitled to qualified immunity because it

was objectively reasonable for them to rely upon the advice of legal counsel in terminating

Plaintiff.[7] (Docket No. 50 at 23-24; Docket No. 73 at 12).

**i.  Availability of Post-Deprivation Remedies**

The Court first addresses the Town Defendants' argument that the post-deprivation

remedies in the CBA and through Article 78 defeat Plaintiff's due process claim.  "The essential

requirements of due process . . . are notice and an opportunity to respond." *Cleveland Bd. of*

*Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).  The Second Circuit has held that "there is no

due process violation where 'pre-deprivation notice is provided and the deprivation at issue can

be fully remedied through the grievance procedures provided for in the collective bargaining

agreement.'" *Coollick v. Hughes*, 699 F.3d 211, 217 (2d Cir. 2012) (citation omitted).  Where a

public employee has a constitutionally protected property interest in his employment,

"procedural due process is satisfied if the government provides notice and a limited opportunity

---

[7] The Town Defendants do not dispute that Plaintiff possessed a protected property interest in his employment as a
Town employee who could only be fired for "just cause." *See S&D Maint. Co., Inc. v. Goldin*, 844 F.2d 962, 967
(2d Cir. 1988) ("In the employment context, a property interest arises only where the state is barred, whether by
statute or contract, from terminating (or not renewing) the employment relationship *without cause*.").

to be heard prior to termination, so long as a full adversarial hearing is provided afterwards." *Locurto v. Safir*, 264 F.3d 154, 171 (2d Cir. 2001) (citing *Loudermill*, 470 U.S. at 543).

The Town Defendants address only whether a *post*-deprivation remedy existed, and they do not discuss whether the Town satisfied its *pre*-termination obligations under the Constitution or the CBA. The availability of an adequate post-termination remedy, whether through a CBA procedure or Article 78 hearing, does not satisfy due process if there was no pre-termination notice. *See Todaro v. Norat*, 112 F.3d 598, 599-600 (2d Cir. 1997) ("A post-hearing termination proceeding such as that provided under Article 78 does not meet the *Loudermill* requirements because it takes place *after* the employee has lost his job"); *Reed v. Medford Fire Dep't, Inc.*, 806 F. Supp. 2d 594, 613-16 (E.D.N.Y. 2011) (fact issues precluded summary judgment on § 1983 claim for failure to provide constitutionally adequate notice, notwithstanding the availability of an adequate post-deprivation remedy).

While pre-termination process "'need not be elaborate' or approach . . . a 'full adversarial evidentiary hearing,' . . . due process does require that before being terminated such an 'employee [be given] oral or written notice of the charges against [him], *an explanation of the employer's evidence*, and an opportunity to present [his] side of the story." *Otero v. Bridgeport Hous. Auth.*, 297 F.3d 142, 151 (2d Cir. 2002) (citations omitted). "[A] disciplinary procedure incorporated into a collective bargaining agreement satisfies due process as long as the procedures called for in the agreement satisfy the constitutionally required minimum process." *Dinkle v. Siracusa*, No. 95 Civ. 4765 (RJD), 1998 WL 661498, at *2 (E.D.N.Y. July 28, 1998) (citing *Narumanchi v. Bd. of Trustees of Conn. State Univ.*, 850 F.2d 70 (2d Cir. 1988)).

Here, the Town Board terminated Plaintiff pursuant to Article IX, Section 5 of the CBA, which reads:

No employee shall be disciplined or discharged without just cause. Just cause shall be subject to the grievance procedure as per this Article – section 6. There shall be a five (5) step discipline process:

1. Warning
2. Written Reprimand
3. Suspension without pay for up to three (3) days
` 4. Suspension without pay for no less than four (4) and no more than ten (10) days
5. Termination

Any action on the part of an employee, which endangers the safety, health or welfare of another employee or citizen of the Town, shall be cause to start at Step 4.

(CBA Article IX, § 5). The record shows that the Town Board adopted the resolution to terminate Plaintiff on June 13, 2016 and served him with notice of his termination on June 14, 2016, in which his employment with the Town was "terminated effective the date of this letter." (Pl. Exs. FF, GG). The Town did not provide Plaintiff with notice or an opportunity to be heard prior to terminating him in violation of *Loudermill's* minimum requirements of pre-termination due process. Nor did the Town comply with the requirements of the CBA, which mandates pre-termination warning and progressive discipline -- written reprimand, suspension without pay for up to three days, and an additional suspension without pay for between four to ten days -- before an employee can be discharged for just cause. In these circumstances, the existence of a post-deprivation remedy in the CBA alone is not enough to preclude a § 1983 claim based on failure to provide constitutionally adequate pre-termination due process.

The Town Defendants relatedly argue that Plaintiff's withdrawal of his grievance under the CBA precludes his claim here. (Docket No. 50 at 23; Docket No. 73 at 12). However, there is no requirement that a plaintiff exhaust state or administrative remedies before he can assert § 1983 claims in federal court. *See Reed*, 806 F. Supp. d at 613 ("[Plaintiff] need not have exhausted other state remedies before bringing his section 1983 claim." (citation and internal

quotation marks omitted)).  Thus, Plaintiff's due process claim remains even though he did not pursue his grievance under the CBA.

## ii. Qualified Immunity

The Court next turns to the argument that the individual defendants are entitled to qualified immunity as a matter of law on Plaintiff's due process claim.  The individual Town Defendants maintain that they cannot be held individually liable because it was objectively reasonable for them to rely upon the advice of counsel in terminating Plaintiff. (Docket No. 50 at 24).  Plaintiff does not respond to this argument in his opposition papers.  However, because Plaintiff simultaneously moved for summary judgment on the Town Defendants' qualified immunity defense in his moving papers, the Court does not deem his argument against qualified immunity abandoned.

"Qualified immunity is an affirmative defense on which the defendant has the burden of proof, either at trial or on a motion for summary judgment." *Johnson v. Perry*, 859 F.3d 156, 170 (2d Cir. 2017).  "The doctrine of '[q]ualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct.'" *Soto v. Gaudett*, 862 F.3d 148, 156 (2d Cir. 2017) (citation omitted).  "[E]ven where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful." *Taravella v. Town of Wolcott*, 599 F.3d 129, 134 (2d Cir. 2010) (citation omitted).  Furthermore, "[s]ummary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness." *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999).

The individual Town Defendants maintain that they are entitled to qualified immunity because the Town Board solicited and relied upon legal advice before terminating Plaintiff.  In *In re County of Erie*, the Second Circuit stated that "[t]he question of whether a right is 'clearly established' is determined by reference to the case law extant at the time of the violation." 546 F.3d 222, 229 (2d Cir. 2008).  It went on to clarify that "[t]his is an objective, not a subjective, test, and reliance upon advice of counsel therefore cannot be used to support the defense of qualified immunity." *Id.*  However, in later cases, the Second Circuit has considered an individual defendant's reliance on the advice of counsel when evaluating the qualified immunity defense.  For example, in *Pavone v. Puglisi*, a case examining whether plaintiff was deprived of disability benefits without due process, the Second Circuit found that the advice of counsel provided "further reasonable justification for Defendants' belief that no hearing was required" before terminating the plaintiff's benefits. 353 Fed. Appx. 622, 626 (2d Cir. 2009).  In *Taravella*, the Second Circuit again, over the dissent's objection that such a holding would violate the precedent set in *County of Erie*, considered the defendant's solicitation of advice of counsel in its qualified immunity analysis. 599 F.3d at 134.  Since *County of Erie*, *Pavone* and *Taravella*, district courts in this Circuit are divided as to whether the advice of counsel can be used in support of a qualified immunity defense. *Compare Barboza v. D'Agata*, 151 F. Supp. 3d 363, 372 (S.D.N.Y. 2015) ("[A]dvice of counsel remains relevant to the objective reasonableness analysis."); *McChesney v. Bastien*, No. 10 Civ. 1409 (GTS)(DEP), 2013 WL 4504459, at *8 (N.D.N.Y. Aug. 22, 2013) (same); *with Holmes v. Town of East Lyme*, 866 F. Supp. 2d 108, 128 (D. Conn. 2012) (declining to consider defendants' argument that they were acting on advice of counsel in terminating plaintiff).

The Court is persuaded by cases that have found that advice of counsel is pertinent to the qualified immunity analysis and will consider it here.  Prior to terminating Plaintiff, Beale asked the Town's counsel, David Wise, if Plaintiff was entitled to a hearing prior to his termination.  (Pl. Ex. EE).  Mr. Wise responded that a hearing prior to termination was not required because "[u]nder the terms of the CSEA CBA, the Town first exercises the right to terminate and the employee can then grieve the termination." (*Id.*).  The Town Board did not ask if Plaintiff was entitled to pre-termination notice, nor did counsel recommend it.  Nor did the Town Board ask counsel what steps it had to take pursuant to the CBA prior to terminating Plaintiff.  The individual Town Defendants cannot, however, claim that they were unaware of the disciplinary and termination procedures prescribed by the CBA.  On June 13, 2016, one day prior to Plaintiff's termination, the Highway Superintendent informed the Town Board that he would not terminate Plaintiff as recommended by counsel but would "act in accordance with the disciplinary procedure as outlined in the Collective Bargaining Agreement with the Town of Wappinger and CSEA UNIT 1000 / Dutchess County Local 814." (*Id.*).  The Town Board adopted its resolution to terminate Plaintiff pursuant to the CBA over the Highway Superintendent's objection.  In Plaintiff's termination letter, the Town Board also cited to the CBA provision stating that Plaintiff could only be terminated for just cause and listing the requisite pre-termination procedures. (Pl. Ex. GG).  These facts preclude a finding on summary judgment that the Town Board members were objectively reasonable in terminating Plaintiff without notice and the opportunity to respond. *See Brenes v. City of N.Y.*, 733 F. Supp. 2d 357, 363 (E.D.N.Y. 2010) (denying defendants' motion for summary judgment on qualified immunity where there were "facts in dispute that are material to a determination of reasonableness").

The Town Defendants' motion for summary judgment on Count II is, therefore, denied.

### 3. Failure to Train, Monitor and Discipline Employees

In Count III, Plaintiff claims that the Town Defendants failed to train, monitor and discipline the Town's employees in violation of *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). The Town Defendants move for summary judgment on this claim. (Docket No. 50 at 24). "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick*, 563 U.S. at 61. However, a "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* Plaintiff does not oppose the Town Defendants' motion regarding this claim. *See Taylor*, 269 F. Supp. 2d at 75 (the claim is deemed abandoned when the party opposing summary judgment fails to address it). Nor has Plaintiff adduced sufficient evidence to support an inference that the Town failed to train its employees with respect to racial harassment. Consequently, the Town Defendants' motion with respect to Count III is granted.

### 4. Retaliation Based on Plaintiff's Termination

In Count VI, Plaintiff claims that the Town Defendants terminated him in retaliation for filing complaints of racial harassment. The Town Defendants move for summary judgment on the following grounds: (1) retaliation claims are not cognizable under § 1983; (2) the Town Board had a legitimate non-discriminatory reason for terminating Plaintiff; and (3) the individual Town Defendants are entitled to qualified immunity.

As an initial matter, the Town Defendants' argument that retaliation claims cannot be sustained under § 1983 ignores the Second Circuit's authority on this issue. In *Vega v. Hempstead Union Free School District*, the Second Circuit settled the ambiguity in its case law with respect to the viability of § 1983 retaliation claims and held that "retaliation claims alleging

an adverse action because of a complaint of discrimination are actionable under § 1983." 801 F.3d 72, 82 (2d Cir. 2015). The Second Circuit recognized that "retaliation is a form of discrimination," and when an employer "discriminates against an employee because he complained of discrimination, the retaliation constitutes intentional discrimination against him for purposes of the Equal Protection Clause." *Id.*

Retaliation claims under § 1983 are analyzed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Roman-Malone v. City of N.Y.*, No. 11 Civ. 8560 (PAC), 2013 WL 3835117, at *4 (S.D.N.Y. June 25, 2013) ("[R]etaliation claims under [ ] § 1983 are analyzed under the Title VII burden-shifting framework."). To establish a *prima facie* case of retaliation, the plaintiff must prove that "(1) he was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 24 (2d Cir. 2014) (citation and internal quotation marks omitted).

Once the plaintiff establishes a *prima facie* case, "the burden shifts to the defendant to articulate 'some legitimate, non-discriminatory reason' for its action." *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008) (quoting *McDonnell*, 411 U.S. at 802). If the defendant provides a nondiscriminatory basis for the employment decision, "the burden shifts back to plaintiff to demonstrate, by a preponderance of the evidence, that the defendant's reasons are merely pretext for discrimination." *Sosa v. Rockland Cnty. Comty. Coll.*, 15 Civ. 3329 (JCM), 2017 WL 3105872, at *4 (S.D.N.Y. July 20, 2017). "The plaintiff need not prove that the explanation offered by the employer was entirely false 'but only that . . . [the defendant's] stated reason was not the only reason' and that consideration of an impermissible factor 'did make a

difference.'" *Phillips v. Dow Jones & Co.,* No. 04 Civ. 5178(DAB), 2009 WL 2568437, at *9

(S.D.N.Y. Aug. 17, 2009) (quoting *Montana v. First Fed. Sav. & Loan Ass'n of Rochester*, 869

F.2d 100, 105 (2d Cir. 1989)) (alteration in original).  "Plaintiff will survive summary judgment

if [he] produces 'evidence sufficient to allow a rational factfinder to infer that the employer was

actually motivated in whole *or in part by* . . . discrimination.'" *Id.* (citation omitted).

**i.  Plaintiff's *Prima Facie* Case of Retaliation**

The Court addresses each element of a *prima facie* retaliation case.  First, protected

activity refers to a plaintiff's action "taken to protest or oppose statutorily prohibited

discrimination." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000), *superseded on

other grounds by* N.C.C. Local L. No. 85.  Plaintiff presents evidence that he engaged in

protected activity by complaining of racial harassment in the workplace on April 7, 2016 in his

Workplace Violence Report as well as his April 12, 2016 complaint filed with the New York

State Division of Human Rights.  With respect to the second prong, the Town Defendants do not

contest that they received notice of Plaintiff's charge of racial discrimination.  Third, adverse

employment actions for the purposes of establishing a *prima facie* retaliation claim are those that

are "harmful to the point that they could well dissuade a reasonable worker from making or

supporting a charge of discrimination." *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010)

(citation and internal quotation marks omitted).  There is no dispute that Plaintiff's termination

on June 14, 2016 constitutes an adverse employment action.

The Town Defendants specifically challenge the fourth prong of a *prima facie* retaliation

case -- causation. (Docket No. 50 at 27).  They take the position that Plaintiff cannot demonstrate

that his complaints of racial harassment caused his termination because intervening events,

specifically the discovery of photographs of him undertaking personal tasks during the workday,

establish the non-discriminatory motive for his termination. "[A] plaintiff making a retaliation claim . . . must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). A plaintiff can "demonstrate causation at the *prima facie* stage on summary judgment or at trial indirectly through temporal proximity." *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013). In this case, Plaintiff filed his complaints in April of 2016 and two months later he was terminated. The close temporal proximity between his complaints and termination is enough to permit a reasonable jury to find a causal relationship between the two, and a reasonable jury could conclude that Plaintiff established a *prima facie* case of retaliation. *See Hiralall v. Sentosacare, LLC*, No. 13 Civ. 4437 (GBD), 2016 WL 1126530, at *14 (S.D.N.Y. Mar. 18, 2016) ("[P]eriods as long as five months have been deemed sufficiently proximate in time to allege a causal relationship for a prima facie case of retaliation.").

### ii. The Town Defendants' Non-Discriminatory Reason for Termination

The Town Defendants offer evidence that Plaintiff was fired on recommendation of outside counsel after an investigation revealed he was performing personal tasks while he was paid to be working for the Town. (Defs. Ex. Y). Plaintiff's argument that the Court cannot consider the photographs on summary judgment is unavailing. (Docket No. 64 at 7). Struss can lay a foundation at trial as to how he photographed Plaintiff. Whether it was proper for the Town Defendants to rely upon the photographs, given the alleged issues with time stamps, is a question to be addressed by the jury. Inappropriately using work time to perform personal tasks is a legitimate non-discriminatory reason for terminating an employee, and thus the burden shifts back to Plaintiff to show that the Town Defendants' proffered reason is a pretext for racial

discrimination. *See Gaidasz v. Genesee Valley Bd. of Co-op. Educ. Sys. (Boces)*, 791 F. Supp. 2d 332, 337 (W.D.N.Y. 2011).

### iii. Evidence of Pretext

Temporal proximity alone is insufficient to satisfy a plaintiff's burden of demonstrating pretext. *See El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010) ("The temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a prima facie case of retaliation . . . but without more, such temporal proximity is insufficient to satisfy [plaintiff's] burden to bring forward some evidence of pretext."). "However, a plaintiff may rely on evidence comprising [his] prima facie case, including temporal proximity, together with other evidence such as inconsistent employer explanations, to defeat summary judgment at the [pretext] stage." *Kwan*, 737 F.3d at 847. Furthermore, a "plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistences, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action." *Id.* at 846; *see also Raniola v. Bratton*, 243 F.3d 610, 625 (2d Cir. 2001) ("Under some circumstances, retaliatory intent may also be shown, in conjunction with the plaintiff's prima facie case, by sufficient proof to rebut the employer's proffered reason for termination.").

A reasonable juror could infer that the reason provided by the Town Defendants for Plaintiff's termination is pretextual. Plaintiff has submitted evidence challenging the plausibility of the Town Defendants' explanation for terminating Plaintiff. Plaintiff was promoted just two months before he filed his complaint of racial harassment and four months before he was terminated, supporting an inference that Plaintiff's work was considered satisfactory prior to his complaint. He was also terminated over the objections of his direct supervisor, Highway

Superintendent Vincent Bettina. (Pl. Ex. EE; Bettina Dep. at 86). There is evidence in the record that the videos and photographs used to justify Plaintiff's termination were not reliable and were time-stamped incorrectly. (Pl. Ex. JJ). There is also evidence that Plaintiff had permission to work from home during the time the Town Defendants allege he was using work time inappropriately. (Pl. 56.1 ¶ 89). Mr. Bettina testified that he was unaware of Plaintiff being absent from work without leave and indicated that he was never questioned about Plaintiff's alleged absences before Plaintiff was terminated. (Bettina Dep. at 74-76). Mr. Bettina further testified that he was considering promoting Plaintiff to foreman before Plaintiff was terminated. (*Id.* at 27). Viewed in the light most favorable to Plaintiff, this evidence would allow a reasonable juror to infer that the Town Defendants' justification for Plaintiff's termination was a pretext for discrimination, precluding summary judgment.

### iv. Qualified Immunity

The Town Defendants argue that the individual defendants are entitled to qualified immunity because it was objectively reasonable for the Town Board to terminate Plaintiff's employment based on his theft of services. (Docket No. 50 at 29). The individual defendants point to the advice of counsel and information they received from Struss and one of Plaintiff's coworkers in support of their qualified immunity defense.

A retaliation claim turns on whether the defendant's alleged retaliatory motive was a but-for cause of the challenged adverse employment action. *See Kwan*, 737 F.3d at 846. Where "specific intent is actually an element of the plaintiff's claim as defined by clearly established law, it can never be objectively reasonable for a government official to act with the intent that is prohibited by law." *Reuland v. Hynes*, 460 F.3d 409, 419 (2d Cir. 2006) (citation and internal quotation marks omitted); *see also Locurto*, 264 F.3d at 168 (qualified immunity cannot be

resolved on summary judgment where it turns on "the factual issue of intent."). While the information provided to the individual defendants, including the advice of counsel, supports the Town Defendants' position that they did not act with retaliatory intent, a reasonable juror could find that these reasons are pretextual based on the facts Plaintiff has identified. *See* Section III.C.4.iii, *supra*. Thus, the individual Town Defendants cannot demonstrate as a matter of law that they are entitled to qualified immunity.

Accordingly, the Town Defendants' motion for summary judgment on Count VI is denied.

### 5. Retaliation Based on Opposition to Plaintiff's Unemployment Insurance Application

Plaintiff's ninth cause of action alleges that the Town Defendants retaliated against him post-employment by opposing his unemployment insurance benefits. The Town Defendants argue that summary judgment on this claim is warranted because the Town's opposition to Plaintiff's unemployment insurance benefits does not qualify as an adverse action. (Docket No. 50 at 30).

In *Burlington Northern & Santa Fe Railway Co. v. White*, the United States Supreme Court adopted a broad interpretation of the antiretaliation bar and found that a plaintiff's 37-day suspension without pay amounted to a material adverse action, even though the plaintiff was reinstated with backpay. 548 U.S. 53, 71-73 (2005). The Supreme Court elaborated that "the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." *Id.* at 69. After *Burlington Northern*, courts in this Circuit have reached differing conclusions as to whether an employer's opposition to its former employee's application for unemployment benefits can constitute an adverse action. In *Wright v. City of Syracuse*, the court held that "an employer's opposition of a terminated employee's application

for unemployment benefits is not adverse action for purposes of a retaliation claim." No. 10 Civ. 661 (GTS)(TWD), 2014 WL 1293527, at *20 (N.D.N.Y. Mar. 31, 2014) (citing cases). The Second Circuit affirmed the dismissal of the *Wright* plaintiff's retaliation claim by summary order, but it did not expressly grapple with the district court's holding that opposition to unemployment benefits cannot constitute an adverse action. *Wright v. City of Syracuse*, 611 Fed. Appx. 8, 11 (2d Cir. 2015) (summary order). Other courts have recognized that a defendant's opposition to a former employee's unemployment benefits could conceivably amount to an adverse action in light of *Burlington Northern's* broadened scope of what constitutes a materially adverse action.

For example, in *Holleman v. Art Crating Inc.*, the court found that "[t]he loss of unemployment insurance benefits presents similar consequences to the temporary loss of wages at issue in *Burlington Northern*." No. 12 Civ. 2719 (VMS), 2014 WL 4907732, at *49 (E.D.N.Y. Sept. 30, 2014). There, the court found that the loss of Plaintiff's unemployment insurance benefits for "many weeks" due to her former employer's opposition constituted an adverse action. *Id.*; *see also Brown v. JPMorgan Chase Bank, N.A.*, No. 12 Civ. 544 (RRM)(LB), 2013 WL 4009795, at *8 (E.D.N.Y. Aug. 5, 2013) ("[T]he seven months plaintiff spent without the [unemployment] benefits[ ] could qualify as an adverse action for retaliation purposes."); *Quintanilla v. Suffolk Paving Corp.*, No. 09 Civ. 5331 (AKT), 2019 WL 885933, at *27 (E.D.N.Y. Feb. 22, 2019) (the timing of an employer's opposition to its former employee's unemployment insurance benefits raised a triable issue concerning retaliatory intent). In *Battacharia v. Pernod Ricard USA, LLC*, the court emphasized the importance of considering the specific facts and circumstances in a retaliation analysis and concluded that a plaintiff's ten-day

delay in receiving unemployment benefits was insufficient to demonstrate material adversity. No. 13 Civ. 7222 (NSR), 2015 WL 4879204, at *12 (S.D.N.Y. Aug. 13, 2015).

Considering the weight of authority, the Court declines to find a bright line rule, as the Town Defendants suggest, that a plaintiff's retaliation claim can never be premised on a former employer's opposition to his or her unemployment insurance benefits, and instead evaluates the specific facts and circumstances of the case. *See Battacharia*, 2015 WL 4879204, at *11.

Here, the Town opposed Plaintiff's application on the basis that he was terminated for cause. (Pl. Ex. II). The Court has already found that triable issues of fact exist as to whether the Town's reason for terminating Plaintiff was a pretext for discrimination. *See* Section III.C.4.iii, *supra*. Moreover, Plaintiff did not prevail on his claim for unemployment insurance benefits until March 24, 2017, approximately nine months after he was terminated. The nine-month delay in receiving benefits is a cognizable adverse action. *See Holleman*, 2014 WL 4907732, at *49 (loss of unemployment benefits for "many weeks" was an adverse action); *Brown*, 2013 WL 4009795, at *8 (delay of seven months in receiving unemployment benefits was materially adverse). Accordingly, the Town Defendants' motion for summary judgment on Plaintiff's post-employment retaliation claim is denied.

**6. Unlawful Surveillance**

The Town Defendants move for summary judgment on the unlawful surveillance claim in Count XIII on the grounds that there is no evidence the Town or its employees engaged in any surveillance of Plaintiff. (Docket No. 50 at 33-34). Plaintiff's claim under § 1983 for unlawful surveillance fails as a matter of law. Plaintiff has not adduced evidence of an official policy or custom resulting in the alleged unlawful surveillance. Nor has he shown that any of the individual defendants were personally involved in the surveillance.

Furthermore, although defendant Struss, Plaintiff's neighbor who took the photographs of Plaintiff, did not file a motion for summary judgment, Plaintiff's claim against him is legally and factually deficient because § 1983 does not create enforceable rights against private citizens who were not acting under the color of state law. *See Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 945-46 (1982). "Where the record indicates that all of the evidentiary materials that a party might submit in response to a motion for summary judgment are before the court, 'a *sua sponte* grant of summary judgment against that party may be appropriate if those materials show that no material dispute of fact exists and that the other party is entitled to judgment as a matter of law.'" *Oladokun v. Ryan*, No. 06 Civ. 2330 (KMW), 2010 WL 3910578, at *4 (S.D.N.Y. Sept. 30, 2010). Plaintiff maintains that Struss acted as an agent of the Town because the Town purportedly ratified his actions when it accepted Struss' photographs. (Docket No. 64 at 9). Contrary to Plaintiff's position, ratification does not create a principal-agent relationship between two third parties simply because one party accepts and relies upon information from the other. Rather, ratification enables an aggrieved party to hold a principal accountable for the unauthorized acts of the principal's agent in limited circumstances. Under the doctrine of ratification:

> Even in the absence of actual or apparent authority, a person may still be liable as a principal if he affirms or ratifies an act done by one who purports to be acting for the ratifier. Under New York law, it is possible to imply ratification if the principal retains the benefit of an unauthorized transaction with knowledge of the material facts. Thus, ratification is a form of retroactive activity that occurs when the principal, having knowledge of the material facts, accepts the benefits of the agent's action already made on his behalf.

*Precedo Cap. Grp. Inc. v. Twitter Inc.*, 33 F. Supp. 3d 245, 254 (S.D.N.Y. 2014) (citation omitted). In this case, there are no facts that support an inference that Struss was acting on behalf of the Town at the time he photographed Plaintiff or that any relationship, much less

an agency relationship, existed between Struss and the Town when Struss took the subject photographs. Struss testified that he photographed Plaintiff on his own initiative, and he did not speak with Jiava until after he had already submitted the photographs to the Town Board on May 24, 2016. (Struss Dep.[8] at 64-65). On this record, there is no evidence that Struss acted as the Town's agent, or that he was acting under the color of state law at the time he photographed Plaintiff.

Thus, Count XIII for unlawful surveillance under § 1983 is dismissed in its entirety as against the Town Defendants and *sua sponte* as against defendant Struss.

## D. Plaintiff's Conspiracy Claims Under § 1985 and § 1986

The Town Defendants move for summary judgment on Plaintiff's conspiracy claim pursuant to 42 U.S.C. § 1985 and failure to prevent conspiracy pursuant to 42 U.S.C. § 1986. (Docket No. 50 at 31-32).

In order to prove conspiracy under 42 U.S.C. § 1985(3), a plaintiff must demonstrate "(1) a conspiracy; (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." *Thomas*, 165 F.3d at 146. "The essence of a conspiracy claim is a combination of two or more persons acting in concert to commit an unlawful act, the principal element of which is an agreement by the parties to inflict wrong upon or injure another." *Almonte v. Florio*, No. 02 Civ. 6722 (SAS), 2004 WL 60306, at *4 (S.D.N.Y. Jan. 13, 2004) (summary judgment in defendant's favor on a conspiracy claim was appropriate where the plaintiff did not demonstrate the existence of an agreement).

---

[8] Refers to the deposition transcript of Anthony Struss, dated September 28, 2018, and attached as Plaintiff's Exhibit RR. (Docket No. 71-48).

Plaintiff's claim for conspiracy against the Town Defendants and Struss fails as a matter of law because Plaintiff has failed to identify any evidence of an unlawful agreement between the Town and Struss or that any overt actions were taken in furtherance of said agreement. Struss submitted a letter to the Town on May 24, 2016 with photographs of Plaintiff working in his yard allegedly during work hours. (Pl. 56.1 ¶ 78). The Town then relied, in part, upon the photographs submitted by Struss in terminating Plaintiff. (Pl. 56.1 ¶ 90; Pl. Ex. FF). There is no evidence that anyone from the Town interacted with Struss prior to May 24, 2016, instructed him to photograph Plaintiff, or reached any sort of agreement with him. The only evidence Plaintiff cites to that could possibly be construed as evidence of an agreement is Jiava's alleged instruction to Struss to "see if anything funny was going on next door." (Pl. 56.1 ¶ 74; Docket No. 64 at 10). However, at his deposition, Struss testified that he did not speak with Jiava until after he had already provided the Town with the photographs and Plaintiff was already under investigation. (Struss Dep. at 64-65). This evidence post-dated Struss' May 24, 2016 letter to the Town and is insufficient to create a genuine issue of material fact as to whether the Town reached an agreement with Struss to injure Plaintiff or whether there were any overt actions taken in furtherance of an agreement. Accordingly, Plaintiff's claim for conspiracy under § 1985 is dismissed as against the Town Defendants and *sua sponte* as against defendant Struss.

Because Plaintiff has failed to present enough evidence to sustain his conspiracy claim, his claim for failure to prevent conspiracy pursuant to 42 U.S.C. § 1986 also fails as a matter of law. *See Fernandez v. Schenley Affiliated Brands Corp.*, No. 87 Civ. 2297 (RO), 1990 WL 164831, at *2 n. 8 (S.D.N.Y. Oct. 23, 1990) ("[A] valid cause of action under § 1985(3) is a necessary predicate for a § 1986 claim.").

**E. Plaintiff's Supplemental State Law Claims**

**1. Discrimination Under New York State Human Rights Law**

The Town Defendants move for summary judgment on Plaintiff's claim for discrimination under NYSHRL § 296(1) in Count V. The NYSHRL makes it an "unlawful discriminatory practice" for "an employer or licensing agency, because of an individual's . . . race . . . to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296(1)(a). Plaintiff premises his NYSHRL claim on wage discrimination, demotion and termination on account of his race. (Compl. ¶ 120).

To demonstrate a discrimination claim under NYSHRL, a plaintiff must prove "(1) the employer took adverse action against [him] and (2) [his] race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Torres v. City of N.Y.*, No. 18 Civ. 3644 (LGS), 2019 WL 1765223, at *2 (S.D.N.Y. Apr. 22, 2019) (quoting *Vega*, 801 F.3d at 86-87). The same burden-shifting framework under *McDonnell* applies to Plaintiff's NYSHRL discrimination claim. *See Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010).

There is sufficient evidence for a reasonable juror to infer that Plaintiff's race was a motivating factor in his termination. Plaintiff was the only African American within the Highway Department and the first African American promoted to Deputy Highway Superintendent. (Pl. 56.1 ¶ 9). Plaintiff's promotion prompted backlash from his coworkers, the CSEA, and the Town Board. The Town Defendants have proffered legitimate non-discriminatory reasons for the negative response to Plaintiff's advancement, such as the CSEA's position that the terms of the CBA had been violated and evidence that Plaintiff was using work time inappropriately. But there is also evidence of racial animus in direct response to Plaintiff's promotion, such as a coworker referring to Plaintiff as a "trouble making nigger" shortly after he

was promoted. One of the alleged acts of discrimination, Plaintiff's termination, occurred two months after he filed a formal complaint of racial harassment. (Pl. Exs. Q, T, GG). Plaintiff has also proffered comparator evidence that shows the Town Board historically recognized the position of Deputy Highway Superintendent when it was assumed by Plaintiff's white predecessors, and the Town Board first took the position that the Deputy Highway Superintendent role simply did not exist when Plaintiff was promoted. *See Husser v. N.Y. City Dep't of Educ.*, 137 F. Supp. 3d 253, 271 (E.D.N.Y. 2015) (comparator evidence precluded summary judgment on NYSHRL discrimination claim). Viewing the evidence in the light most favorable to Plaintiff, this evidence creates a triable issue of fact as to whether Plaintiff's termination was motivated by discrimination.

The Town Defendants argue that Plaintiff's claims under NYSHRL should rise and fall with his claims under § 1983. (Docket No. 50 at 25-26). However, the claims are governed by different standards for holding an employer liable for discriminatory conduct. Under NYSHRL, liability for an employee's discriminatory conduct may be imputed to an employer if the employer "became a party to it by encouraging, condoning or approving it." *Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509, 521 (S.D.N.Y. 2015) (citation and internal quotation marks omitted). Here, there is no dispute that the Town condoned the alleged discriminatory acts identified in support of Plaintiff's § 296(1) claim -- Plaintiff's compensation and termination -- which the Town maintains were appropriate. Plaintiff's NYSHRL § 296(1) claim can, therefore, proceed against the Town.

Furthermore, "[t]he NYSHRL allows for individual liability under two theories: [i] if the defendant has 'an ownership interest' in the employer or has 'the authority to hire and fire employees.' . . . [or] [ii] if the defendant aided and abetted the unlawful discriminatory acts of

others." *Gorman*, 146 F. Supp. 3d at 521-22 (citations omitted). The Town Defendants admit that the Town Board members had the authority to hire and fire employees. Therefore, the individual Board members can be held liable under § 296(1) of the NYSHRL.

For the foregoing reasons, the Town Defendants' motion for summary judgment on Count V is denied.

## 2. Unlawful Surveillance

Plaintiff's claim for unlawful surveillance under New York state law fails. Plaintiff does not identify any statute or case that recognizes a private right of action for unlawful surveillance. In fact, the parties' papers are bereft of any authority applying state law with respect to their respective positions on Count XXIV, and there is no authority before the Court that would enable Plaintiff to bring an unlawful surveillance claim against the Town Defendants or Struss under state law. To the extent Count XXIV can be construed as a § 1983 claim for violation of Plaintiff's Fourth Amendment rights, it fails for the reasons discussed above. *See* Section III.C.6, *supra*. Accordingly, the Court dismisses Count XXIV as against the Town Defendants and *sua sponte* as against Struss.

## 3. Unjust Enrichment

The Town Defendants argue that Plaintiff's claim for unjust enrichment under New York law should be dismissed. (Docket No. 50 at 33). The crux of Plaintiff's unjust enrichment claim is that he was not provided with a raise when he was promoted to Deputy Highway Superintendent. (Docket No. 64 at 20). "Under New York law, a party claiming unjust enrichment must establish three elements: (1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and (3) that the circumstances are such that in equity and good conscience the defendant should return the money or property to the plaintiff." *Stolarik v. N.Y. Times Co.*, 323 F. Supp. 3d 523, 544 (S.D.N.Y. 2018) (citation and internal quotation

marks omitted).  First, the Town Defendants argue that the unjust enrichment claim should be dismissed because Plaintiff did not include it in his Notice of Claim as required by New York State's General Municipal Law § 50-e. (Docket No. 50 at 33).  Second, the Town Defendants contend that Plaintiff's failure to exhaust his remedies pursuant to the CBA between the Town and the CSEA precludes his claim. (*Id.* at 34).  Third, the Town Defendants maintain that Plaintiff has not demonstrated that he performed work outside the scope of his duties or was not reasonably compensated for his work. (*Id.*).

"In federal court, state notice-of-claim statutes apply to state-law claims." *Parise v. N.Y. City Dep't of Sanitation*, 306 Fed. Appx. 695, 697 (2d Cir. 2009).  In New York, a notice of claim is a condition precedent to bringing a tort action against a municipal corporation. *See* N.Y. Gen. Mun. Law § 50-e.  However, courts addressing this issue have found that the notice requirements of Section 50-e do not apply to claims for unjust enrichment, which sound in equity and quasi-contract rather than tort. *See MacIntyre v. Moore*, 335 F. Supp. 3d 402, 412 (W.D.N.Y. 2018) ("Since Plaintiffs have alleged a cause of action for unjust enrichment, which sounds in equity and quasi-contract, Plaintiffs were not required to satisfy the notice of claim requirements of General Municipal Law § 50-e."); *Cangemi v. United States*, 939 F. Supp. 2d 188, 201 (E.D.N.Y. 2013) ("Notice is not necessary for equitable claims, such as unjust enrichment.").  Accordingly, Plaintiff's failure to include an unjust enrichment claim in his Notice of Claim does not bar him from asserting such a claim in this lawsuit.

The Court turns next to the Town Defendants' argument that the CBA precludes Plaintiff's claim for unjust enrichment.  "[A] plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights *independent* of that agreement, including state-law contract rights, so long as the contract relied upon is *not* a collective-bargaining agreement."

*Caterpillar Inc. v. Williams*, 482 U.S. 386, 396 (1987). However, if a plaintiff's unjust enrichment claim "'hinge[s] on rights created by the CBA,' that claim is preempted by the LMRA [Labor Management Relations Act]." *Stolarik*, 323 F. Supp. 3d at 544 (citation omitted). If the rights Plaintiff seeks to vindicate are premised on the CBA, Plaintiff is "required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement before bringing suit." *Id.* at 545 (citation and internal quotation marks omitted). Although Plaintiff does not respond to this argument, factual issues remain as to whether Plaintiff's purported right to a stipend was a right that hinged on the CBA given the evidence that the Town Board was tasked with approving funds for Plaintiff's position. (Bettina Dep. at 19-23).

Nonetheless, Plaintiff's unjust enrichment claim fails on the merits because Plaintiff has failed to raise a triable issue of fact on his claim. Courts in this Circuit have held that "a plaintiff may not allege that his former employer was 'unjustly' enriched at his expense when the employer compensated the plaintiff by paying him a salary." *Levion v. Societe Generale*, 822 F. Supp. 2d 390, 405 (S.D.N.Y. 2011). Here, Plaintiff concedes that he continued to receive his MEO salary guaranteed through the CBA, and he bases his claim solely on the fact that he did not receive a pay raise to serve as Deputy Highway Superintendent. (Docket No. 64 at 20). Plaintiff has not identified any right or expectation to a stipend or pay increase, either through a promise made by the Town Defendants, by statute, or otherwise. "Courts applying New York law require a plaintiff to allege some expectation of compensation that was denied in order to demonstrate that equity requires restitution." *Tasini v. AOL, Inc.*, 851 F. Supp. 2d 734, 740 (S.D.N.Y. 2012) (citing *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 509-10 (2d Cir. 2009)).

Plaintiff alleges that Mr. Bettina stated he would receive a stipend once he was promoted. (Docket No. 64 at 18-19). However, Plaintiff acknowledged that he knew a pay raise did not

come automatically with his promotion and that he had to request it. (Pl. Dep. at 109). When

Plaintiff asked Mr. Bettina about a pay raise, Mr. Bettina informed Plaintiff that he would "take

care of" him. (*Id.*). Mr. Bettina's deposition testimony demonstrates that the prior Deputy

Highway Superintendent did not receive a stipend or any additional money for his role as

Deputy. (Bettina Dep. at 21). Mr. Bettina asked the Town Board to start funding the Deputy

position at the time Plaintiff assumed the role, but the Town Board declined to do so. (*Id.*). This

evidence is insufficient to demonstrate an expectation of a benefit, especially given that Plaintiff

was aware there was no guarantee that he would receive a pay raise at the time he became

Deputy. (Pl. Dep. at 109). Thus, Plaintiff cannot make a showing that equity and good

conscience require restitution, and the Town Defendants' motion for summary judgment on

Plaintiff's unjust enrichment claim is granted.

## 4. Emotional Distress Claims

Finally, the Town Defendants move for summary judgment on Plaintiff's claims for

intentional infliction of emotional distress and negligent infliction of emotional distress.[9] (Docket

No. 50 at 36). Both claims are dismissed.

Under New York law, a claim for intentional infliction of emotional distress requires (1)

that there was "extreme and outrageous conduct"; (2) that the conduct was undertaken with

"intent to cause, or disregard of a substantial probability of causing, severe emotional distress;"

and (3) that the conduct did in fact cause severe emotional distress. *Turley v. ISG Lackawanna,*

*Inc.*, 774 F.3d 140, 158 (2d Cir. 2014). Intentional infliction of emotional distress remains a

"highly disfavored [tort] under New York law," (*id.*) and conduct only constitutes "extreme and

---

[9] Plaintiff voluntarily dismissed his intentional and negligent infliction of emotional distress claims against the Town and the individual Town Defendants in their official capacities. (Pl. Ex. F). The remaining claim is asserted against the individual Town Defendants in their individual capacities and defendant Struss. (*Id.*).

outrageous" behavior if it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Murphy v. Am. Home Prods. Corp.*, 461 N.Y.S.2d 232, 236 (1983) (citation and internal quotation marks omitted). Generally, workplace disputes, even those involving discrimination, harassment, and hostile work environment claims, do not constitute the extreme and outrageous conduct required to maintain a claim of intentional infliction of emotional distress. *See Ibraheem v. Wackenhut Servs., Inc.*, 29 F. Supp. 3d 196, 215 (E.D.N.Y. 2014) (collecting cases). In this case, the actions of the Town Defendants are inadequate, as a matter of law, to sustain a claim for intentional infliction of emotional distress.

Plaintiff's claim for negligent infliction of emotional distress similarly fails as a matter of law. A plaintiff may prove a claim for negligent infliction of emotional distress under two theories. First, under a "bystander" theory, a plaintiff may recover for a purely emotional injury if (1) he is "threatened with physical harm as a result of defendant's negligence;" and (2) he consequently "suffers emotional injury from witnessing the death or serious bodily injury of a member of [his] immediate family." *Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 1996). Second, under a "direct duty" theory, a plaintiff can maintain a claim by demonstrating that he suffered "an emotional injury from defendant's breach of duty which unreasonably endangered [his] own physical safety." *Id.* Plaintiff has not presented any evidence demonstrating these requirements. Accordingly, the Town Defendants' motion for summary judgment as to Plaintiff's claims of emotional distress is granted.

## IV. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff moves for summary judgment on his claims for hostile work environment, discrimination, violation of due process and retaliation. Plaintiff also argues that the Town

Defendants' defenses fail as a matter of law and that he is entitled to punitive damages. For the reasons discussed above, Plaintiff's § 1983 hostile work environment claim is dismissed in its entirety. *See* Section III.C.1, *supra*. Thus, the Court will address whether Plaintiff is entitled to summary judgment on his discrimination, due process and retaliation claims and whether there are triable issues of fact regarding the individual Town Defendants' affirmative defense of qualified immunity.

## A. Discrimination Based on Disparate Pay

Plaintiff moves for summary judgment on his § 1981 claim based on wage discrimination. (Docket No. 54-3 at 24). As discussed above, § 1981 does not create a private cause of action, thus the Court will examine Plaintiff's wage discrimination claim under § 1983. Plaintiff's motion for summary judgment on his § 1983 wage discrimination claim is denied for several reasons. First, Plaintiff has not addressed much less demonstrated as a matter of law that the Town had an official custom or policy of discrimination based on disparate pay. Second, factual issues regarding the Town Defendants' discriminatory intent preclude summary judgment in Plaintiff's favor. Plaintiff has not proven, as a matter of law, that he did not receive increased compensation because of his position within a protected class, and the Town Defendants have proffered a legitimate non-discriminatory reason for not providing Plaintiff with a stipend. Given the disputed factual issues of discriminatory intent, Plaintiff's motion as to his § 1983 wage discrimination claim is denied. *See Eisen v. Maynard*, No. 91 Civ. 6932 (MGC),1994 WL 414457, at *2 (S.D.N.Y. Aug. 5, 1994) (denying Plaintiff's motion for summary judgment where he failed to show that there is "no genuine issue of dispositive fact with respect to his claim of [ ] discrimination").

**B. Violation of Equal Protection Based on the Town's Vehicle Policy**

Plaintiff moves for summary judgment on his § 1983 claim for violation of equal protection based on the Town's vehicle policy, which prohibited the Deputy Highway Superintendent from using the Town Vehicle. (Docket No. 54-3 at 25). Plaintiff argues that the Town's vehicle policy, despite being facially neutral, violates the equal protection clause because it was adopted with a constitutionally impermissible purpose. (*Id.*). In response, the Town Defendants contend that Plaintiff has failed to prove injury, a cognizable adverse employment action, or that the subject policy was applied to Plaintiff discriminatorily. (Docket No. 85 at 21-22).

"[L]aws which brand persons as inferior because of their color or race and thereby act as a stimulant to race prejudice are inconsistent with the Equal Protection Clause." *Local Union No. 35 of Int'l Broth. of Elec. Workers v. City of Hartford*, 625 F.2d 416, 420 (2d Cir. 1980). "[A] law which is facially neutral violates equal protection if it is applied in a discriminatory fashion." *Jana-Rock Constr., Inc. v. N.Y. State Dep't of Economic Dev.*, 438 F.3d 195, 204 (2d Cir. 2006) (citation and internal quotation marks omitted). "[A] plaintiff who . . . alleges that a facially neutral law or policy has been applied in an intentionally discriminatory race-based manner . . . is not obligated to show a better treated, similarly situated group of individuals of a difference race in order to establish a claim of denial of equal protection." *Pyke v. Cuomo*, 258 F.3d 107, 110 (2d Cir. 2001). Rather, "such a plaintiff must demonstrate that [ ] the application of the law was motivated by discrimination." *Savino v. Town of Southeast*, 983 F. Supp. 2d 293, 302 (S.D.N.Y. 2013); *see also Congregation Rabbinical Coll. of Tarikov, Inc. v. Vill. of Pomona*, 915 F. Supp. 2d 574, 615 (S.D.N.Y. 2013) ("To prove an equal protection violation, claimants must prove purposeful discrimination by a government actor") (citation and internal quotation marks

omitted).  "Once a plaintiff shows that a decision was motivated 'at least in part,' [by plaintiff's race], a defendant must show that the same result would have been reached even without the impermissible consideration." *Savino*, 983 F. Supp. 2d at 302-03 (citation omitted).  Plaintiff has not proven as a matter of law that the Town's vehicle policy was applied in a discriminatory fashion or was motivated by discriminatory animus.  The Town Defendants have presented a non-discriminatory rationale for the adoption of the vehicle policy and submitted evidence that the new policy applies equally to Plaintiff's white successor.  In these circumstances, summary judgment in Plaintiff's favor is inappropriate.

Plaintiff further argues that he has met his burden on liability under a "class of one" theory because he was treated differently than his predecessor. (Docket No. 54-3 at 27).  A class of one claim exists "where the plaintiff alleges that [h]e has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  In *Engquist v. Oregon Dep't of Agriculture*, the Supreme Court held that "the class-of-one theory of equal protection has no application in the public employment context." 553 U.S. 591, 607 (2008).  The Supreme Court reasoned that government offices could not function if personnel decisions "such as promotion, salary, or work assignments" became the basis for an equal protection complaint. *Id.* at 607-08.  The difference in treatment that Plaintiff complains of here, such as the difference in compensation and use of the Town vehicle, is barred by *Engquist* and Plaintiff cannot succeed on summary judgment

Accordingly, Plaintiff's motion for summary judgment on his § 1983 claim for violation of the equal protection clause is denied.  While Plaintiff may proceed to trial on his equal protection claims based on race, he may not proceed on a "class of one" theory.

## C. Due Process

Plaintiff moves for summary judgment on his due process claim on the basis that there is no factual dispute that the Town terminated him without notice and in violation of the terms of the CBA. (Docket No. 54-3 at 29).

The due process analysis is a two-step process. First, it must be determined whether a plaintiff has a property or liberty interest protected by the Constitution. *Narumanchi*, 850 F.2d at 72. Second, if Plaintiff has a protected property interest, the inquiry focuses on what process was due to the plaintiff and whether the constitutional minimum was provided. *Id.*

With respect to the first step in the due process analysis, the parties do not dispute that Plaintiff possessed a protected property interest in his employment with the Town as an employee who could only be terminated for "just cause" under the CBA. (CBA Article IX, § 5). Indeed, courts have regularly found that the contractual terms of a CBA can create an expectation of continued employment and create a due process property right. *See Recchia-Hansemann v. BOCES*, 901 F. Supp. 107, 110-11 (E.D.N.Y. 1995) ("Generally, collective bargaining agreements found to give rise to a property right explicitly provide that an employee can only be fired 'for cause'"); *Dinkle*, 1998 WL 661498, at *2 ("the collective bargaining agreement . . . qualifies as a contract that creates . . . an expectation of continued employment.").

With respect to the second step in the due process analysis, because Plaintiff had a protected property interest in his employment, prior to being terminated he was entitled to, at a minimum, notice and a limited opportunity to respond. *See Locurto*, 264 F.3d at 171. The CBA affords even greater pre-termination protections, requiring the following progressive discipline before an employee can be terminated:

1. Warning
2. Written Reprimand

3. Suspension without pay for up to three (3) days
` 4. Suspension without pay for no less than four (4) and no more than ten (10) days
5. Termination

(CBA Article IX, § 5). Here, there is no dispute that the Town did not provide Plaintiff with pre-deprivation notice of his termination or follow steps (1) through (4) of the CBA before terminating Plaintiff. The Town Defendants maintain that they were not required to provide Plaintiff with pre-termination notice or the opportunity to respond for two reasons. First, the Town Defendants argue that the availability of post-deprivation remedies through the CBA and Article 78 satisfied due process. (Docket No. 65 at 23). Second, the Town Defendants argue in a footnote and at oral argument that the Town could terminate Plaintiff for theft of municipal funds without following the 5-step discipline process. (Docket No. 65 at 23). Both arguments are unavailing.

First, as discussed above, the adequacy of *post*-deprivation due process does not bear on the adequacy of *pre*-deprivation due process. Due process requires both notice and the opportunity to be heard prior to the challenged deprivation as well as adequate post-deprivation remedies. As the Second Circuit explained in *Todaro*:

> The district court's decision that a post-termination hearing under Article 78 was constitutionally adequate directly conflicts with the holding of *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), which requires a government entity to give its tenured employee notice and an opportunity to respond *before* he is terminated from a public position. Due process does not require a full, judicial-type hearing before employment is terminated, but certain features must be present to fulfill the minimum requirements of fairness: the employee must be given oral or written notice of the charges against him, an explanation of the employer's evidence, and the opportunity to present his side of the story. *Id.* at 546, 105 S.Ct. at 1495. A post-termination proceeding such as that provided under Article 78 does not meet the *Loudermill* requirements because it takes place *after* the employee has lost his job. We therefore vacate the district court's grant of Norat's 12(b)(6) motion.

112 F.3d at 599-600. Here, the availability of *post*-deprivation procedures does not excuse the Town from comporting with the minimum requirements of pre-deprivation due process. The cases cited by the Town Defendants do not compel a different conclusion. In *Jordan v. County of Chemung*, the adequacy of Plaintiff's pre-termination notice was not an issue before the Court. 264 F. Supp. 3d 497, 517 (W.D.N.Y. 2017). Likewise, in *Narumanchi*, the plaintiff received pre-deprivation notice, the sufficiency of which was not in dispute. 850 F.2d at 72. In *Pinder v. City of New York*, the court held that plaintiff did not possess any property rights in her employment, and the court addressed the adequacy of the CBA grievance procedures and Article 78 proceeding in *dicta*. 853 N.Y.S.2d 312, 313 (1st Dep't 2008).

Second, the Town Defendants argue that they were not required to follow the bargained-for pre-termination procedures in the CBA because the Town's counsel determined that Plaintiff's theft of services amounted to just cause. (Docket No. 65 at 23). The Town Defendants' proposed interpretation of their pre-termination obligations under the CBA is in derogation of the CBA's express terms. It is well settled that "collective-bargaining agreements must be interpreted 'according to the ordinary principles of contract law.'" *CNH Indus. N.V. v. Reese*, 138 S. Ct. 761, 763 (2018) (quoting *M&G Polymbers USA, LLC v. Tackett*, 135 S. Ct. 926, 933 (2015)). The CBA states that there "*shall* be a five (5) step discipline process," which culminates in termination only after the Town exhausts steps (1) through (4). (CBA Article IX, § 5) (emphasis added). The CBA provides for only one circumstance in which the Town can bypass steps (1) through (3): "Any action on the part of an employee, which endangers the safety, health or welfare of another employee or citizen of the Town, shall be cause to start at Step 4." (*Id.*). Even under the sole carveout for welfare endangerment provided for by the CBA,

the Town is not authorized to proceed directly to termination, as it did here. Thus, the plain terms of the CBA do not support the Town Defendants' position that they were not required to abide by the 5-step disciplinary process. Even assuming, *arguendo*, that the Town Defendants' reading of the CBA is correct, the Town's termination of Plaintiff with no notice or opportunity to be heard prior to his termination would still violate the minimum constitutional due process mandated by *Loudermill*. *See Dinkle*, 1998 WL 661498, at \*2 (disciplinary procedures in collective bargaining agreements may satisfy due process "as long as the procedures called for in the agreement satisfy the constitutionally required minimum process.").

There is no dispute between the parties that Plaintiff possessed a protected property interest in his employment. He was, therefore, entitled to minimum due process prior to being terminated in the form of notice and the opportunity to be heard. It is also uncontested that Plaintiff did not receive pre-termination notice or the opportunity to be heard. Given the absence of any material facts as to any issue in the due process analysis, Plaintiff's motion for summary judgment on his § 1983 due process claim against the Town and the individual Town Defendants in their official capacities is granted.[10] However, because factual issues remain as to the qualified immunity defense, Plaintiff's motion as to the individual Town Defendants in their individual capacities is denied.

## D. Retaliation

Plaintiff moves for summary judgment on his retaliation claims. Plaintiff's motion is denied given that material factual issues remain as to the Town Defendants' alleged retaliatory intent. Intent is rarely amenable to summary judgment, and here Plaintiff has simply failed to

---

[10] As discussed earlier, the Town can be held responsible for the Town Board's decision to discharge Plaintiff, as the Town Board was the final policymaking entity in the Town with respect to Plaintiff's termination. *See* Section III.C.2.

demonstrate as a matter of law that the Town Defendants' reasons for terminating him were pretext. *See DeGennaro v. N.Y. City Hous. Auth.*, No. 92 Civ. 5985 (MBM), 1995 WL 37850, at *3 (S.D.N.Y. Jan. 31, 1995) ("[E]mployer's alleged retaliatory response involves defendants' motive and intent, issues which are not generally amenable to summary judgment.").

Plaintiff further argues that the Court should disregard the photographs the Town Defendants submitted in support of their proffered legitimate non-discriminatory reason for terminating Plaintiff because they are not reliable. However, the Town Defendants are permitted to cite to the evidence they received and relied upon in making the decision to terminate Plaintiff, and arguments as to whether the photographs credibly support their decision are properly made before a jury.

**E. Qualified Immunity**

Plaintiff argues that the individual Town Defendants have failed to prove that they are entitled to qualified immunity. However, factual issues remain as to whether it was objectively reasonable for the individual defendants to believe that their actions were lawful. *See Lennon*, 66 F.3d at 420. Consequently, the Court cannot decide this issue as a matter of law.

**F.  *Monell* Claim**

Plaintiff argues that he has met his burden under *Monell* as a matter of law. (Docket No. 54-3 at 37). However, Plaintiff has not identified with specificity which claims under § 1983 he contends he has satisfied his *Monell* burden on, limiting the Court's ability to review whether Plaintiff is entitled to summary judgment. As discussed above, claims premised on the Town Board's decision to terminate Plaintiff can fairly be charged against the Town, as the Town Board was the highest policymaking entity with respect to Plaintiff's termination. However, Plaintiff has not met his burden of proving that the Town had an official policy or custom with

respect to claims premised on the racial harassment allegedly carried out within the Highway Department. Thus, unless otherwise specified within this decision, Plaintiff's motion for summary judgment as to his burden under *Monell* is denied.

## G. Punitive Damages

"§ 1981[ ] and § 1983 do not provide for punitive damages against municipalities." *Brown v. Baldwin Union Free Sch. Dist.*, 603 F. Supp. 2d 509, 518 (E.D.N.Y. 2009). Likewise, "municipal officials who are sued in their official capacities are immune from punitive damages under the civil rights laws." *M.O.C.H.A. Soc., Inc. v. City of Buffalo*, 199 F. Supp. 2d 40, 52 (W.D.N.Y. 2002). In light of the factual issues that preclude liability on Plaintiff's claims against the individual Town Defendants in their individual capacities, Plaintiff's request for punitive damages is premature. Accordingly, Plaintiff's motion for summary judgment on punitive damages against the individual Town Defendants in their individual capacities is denied without prejudice.

## V. CONCLUSION

For the foregoing reasons, the Town Defendants' motion is granted in part and denied in part. Specifically, the motion is granted with respect to (1) the Highway Department and the Town Board, (2) Plaintiff's §1983 claims for hostile work environment, failure to train and unlawful surveillance, (Counts I, III, and XIII), (3) Plaintiff's conspiracy claims under § 1985 and § 1986, (Counts X and XI), and (4) Plaintiff's supplemental state law claims for unlawful surveillance, unjust enrichment, intentional infliction of emotional distress, and negligent infliction of emotional distress, (Counts XIX, XXIV, and XXV). The Town Defendants' motion is denied as to Plaintiff's § 1983 claim for violation of due process, (Count II), Plaintiff's § 1983 claims for retaliation (Counts VI and IX), and Plaintiff's NYSHRL claim for discrimination,

(Count V).  Plaintiff's motion is denied in part and granted in part.  The Court grants Plaintiff's

motion only to the extent the Town and the individual Town Defendants in their official

capacities are liable for Plaintiff's § 1983 due process claim in Count II.  The Clerk is

respectfully requested to terminate the pending motions. (Docket Nos. 47, 53, 70).  The Clerk is

further requested to mail a copy of this opinion to the *pro se* defendant, Anthony Struss.


Dated:    July 9, 2019
          White Plains, New York

                                    **SO ORDERED:**


                                    _____
                                    JUDITH C. McCARTHY
                                    United States Magistrate Judge